**Dated: May 1, 2025**

**The following is ORDERED:**



*Paul R. Thomas*
PAUL R. THOMAS
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

In re:

HORIZON PIPELINE AND
CONSTRUCTION, LLC

      Debtor.

Case No. 24-80586-PRT
Chapter 7

LUKE HOMEN, CHAPTER 7 TRUSTEE,

      Plaintiff,

v.

WESTREET CREDIT UNION; GLSJ
LLC; ALAN W. MARTIN; and GLEN
SPARKS,

      Defendants.

Adversary Case No. 24-08015-PRT

### ORDER DENYING PARTIAL MOTION TO DISMISS

The Defendant WeStreet Credit Union seeks partial dismissal of this case pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this case by Fed. R. Bankr. P. 7012(b). After review of the record and applicable legal authorities, the Court finds that it will deny dismissal, without

prejudice. The Plaintiff has sufficiently set forth claims upon which relief may be granted, and the Court finds it is premature to determine the application of the safe harbor provisions of 11 USC § 546(e).

## **Background**

The Debtor is an oil and gas company, organized as an Oklahoma limited liability company. Defendant Alan W. Martin ("Martin") owned 100% of the Debtor. In August of 2021, Martin entered into a Membership Purchase Agreement ("Purchase Agreement") with Defendant Glen Sparks ("Sparks") to sell his ownership interest in the Debtor to Sparks. The purchase price was $9,500,000, of which $6,500,000 would be paid in cash to Martin, and the remaining $3,000,000 would be carried by Martin. At the time of this agreement, Sparks owned 100% of GLSJ LLC ("GLSJ"), another defendant herein. Sparks assigned his rights under the Purchase Agreement to GLSJ.

On May 9, 2022, to finance the cash portion of the purchase of the Debtor, GLSJ entered into a loan agreement ("Loan Agreement") with Defendant WeStreet and executed a promissory note ("Promissory Note") for $6,500,000 in favor of WeStreet. To secure the Loan Agreement and Promissory Note executed by GLSJ, the Debtor executed a Security Agreement ("Security Agreement"), signed by Sparks, whereby it pledged all its assets to WeStreet. The Promissory Note required monthly payments of $57,970.53 to WeStreet. The Debtor made payments on the Promissory Note prior to filing bankruptcy, totaling $1,287,717.

GLSJ also executed a real estate mortgage on May 9, 2022, regarding property owned by Martin in McAlester, Oklahoma. Martin transferred this property to the Debtor on June 22, 2022 for $890,000. On January 5, 2023, the Debtor transferred that property to GLSJ for no consideration. The Debtor also transferred real property located in Reeves County, Texas to

GLSJ for no consideration on May 27, 2022. That same date, GLSJ mortgaged the Texas property to WeStreet.

In August of 2022, the Debtor pledged its receivables to WeStreet in exchange for a line of credit for $500,000. This transaction appears to be unrelated to the Purchase Agreement.

The Debtor filed bankruptcy under chapter 7 on July 26, 2024.[1]

The Trustee characterizes the transactions involving the Purchase Agreement of the Debtor as a leveraged buyout, whereby GLSJ purchased the Debtor by obtaining a loan for the majority of the purchase price from WeStreet and pledged the Debtor's assets as collateral for that loan. He seeks to avoid the Debtor's pledge of all its assets to secure the debt of GLSJ to WeStreet, the Debtor's payments of GLSJ debts to WeStreet, the transfers of the Debtor's real estate, and mortgages of Debtor's real estate to WeStreet. The Trustee also seeks to equitably subordinate WeStreet's claim in the bankruptcy case as the Loan Agreement harmed the Debtor's existing creditors.

## Dismissal pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint itself to ensure that it contains sufficient factual matter that, when accepted as true, states a claim for relief that is plausible on its face.[2] In analyzing a 12(b)(6) motion, a court should assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff.[3] The court should not dismiss even if it appears unlikely the

---

[1] Case No. 24-80586, ECF No. 1.
[2] Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).
[3] *Dias v. City & Cnty of Denver*, 567 F.3d 1169, 1178 (10th Cir.2009).

allegations can be proven.[4] Here, WeStreet seeks dismissal under 12(b)(6) for two reasons. First, it focuses on the Trustee's avoidance causes of action pursuant to 11 U.S.C. §§ 544, 548(a) and 550[5] and the Oklahoma Uniform Fraudulent Transfer Act as to his First, Second and Third Causes of Action, arguing that the targeted transactions fall under the safe harbor provision of § 546(e); therefore, the Trustee cannot state a claim for relief. Second, WeStreet seeks dismissal of the Trustee's Sixth Cause of Action for equitable subordination because it lacks specificity, rests on conclusory allegations, and fails to meet a heightened pleading standard WeStreet believes to apply to this cause of action.

### A. Safe Harbor Defense under § 546(e)

Section 546(e) is an exception to a trustee's avoiding powers and is recognized as an affirmative defense to an avoidance action. "Defendants therefore bear the burden of demonstrating that the transfers fall within the safe harbor. . . . Plaintiffs are under no obligation to plead facts supporting or negating an affirmative defense in the complaint." *In Re: Nine W. LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023), *cert. denied sub nom. Stafiniak v. Kirschner as Tr. of NWHI Litig. Tr.*, 144 S. Ct. 2551, 219 L. Ed. 2d 1216 (2024) (citations omitted).[6]

Our circuit recognizes that it may be appropriate to dismiss a claim on the pleadings based on an affirmative defense, but "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez* v. *Clean*

---

[4] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 556 (2007)).

[5] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

[6] *See also Chen v. Dillard Store Servs., Inc.*, 579 F. App'x 618, 621 (10th Cir. 2014).

*House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). In other words, the elements of the affirmative defense must appear plainly on the face of the complaint.[7]

WeStreet cites the following portions of § 546(e)'s safe harbor affirmative defense as applicable to this case:

> [T]he trustee may not avoid a transfer that is a …*settlement payment*, as defined in section 1010 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, *or* that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a *securities contract,* as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.[8]

"Settlement payment" is defined in § 741(8) as a payment "commonly used in the securities trade."[9] "Securities contract" is defined in § 741(7), in relevant part, as a "contract for the purchase, sale, or loan of a security…." Both parties agree that whether the subject transfers fall within the safe harbor as either a "settlement payment" or made in connection with a "securities contract" depends on whether Martin's 100% ownership interest in the Debtor, a limited liability company, was a "security." Section 101(49) defines "security." Subparagraph (A) lists items that are included in the term "security" such as a note, stock, investment contract, interest of a limited partner in a limited partnership, or other claim or interest commonly known as "security."

---

[7] *See Miller v. Shell Oil Co.,* 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)(6)]."). *See also, In re Bayou Steel BD Holdings, L.L.C.,* 642 B.R. 371, 382 (Bankr. D. Del. 2022) ("If the bar is not apparent on the face of the complaint, then it may not be afforded the basis for a dismissal." (citation omitted)).

[8] § 546(e) (*emphasis added).*
[9] 11 U.S.C. §741(8).

Section 101(49)(B) identifies items that are not considered a "security." Neither of these subparagraphs specifically identifies an interest in a limited liability company.

WeStreet argues that the Bankruptcy Code is clear on its face and there is no need to search beyond it to interpret the meaning of the relevant terms. It argues that the definition of "security," "settlement payments" or "in connection with a securities contract" should be broadly interpreted to encompass an interest in a limited liability company and the transfers at issue. The Trustee argues that a single member interest is not a security in the context of this case as defined by the Tenth Circuit and urges the Court to consider securities law when determining the meaning and application of the safe harbor provision of § 546(e). While the Court acknowledges that the statutory text should generally be broadly construed, it is incomplete since it does not specifically include an interest in an LLC. Thus, this Court must resort to case law and, perhaps, legislative history, to determine the issues presented in WeStreet's Motion.

WeStreet urges an expanded application of § 546(e), citing *Kaiser Steel Corp. v. Charles Schwab & Co.,* 913 F.2d 846 (10th Cir. 1990). The transactions at issue in *Kaiser* were part of a leveraged buyout of a publicly traded company, consisting of a sale of shareholders' common stock in exchange for cash and preferred stock in the surviving company. Unlike this case, the subject transfer undoubtedly involved a security. The issue was whether it was a settlement payment under § 546(e). The court found that the transfer of consideration in the leveraged buyout of a publicly traded company was a "securities transaction," and the transfer of the cash and preferred stock by a broker was the settlement of that transaction, thereby qualifying the transaction as a settlement payment exempt from avoidance pursuant to § 546(e). In applying § 546 and the definition of "settlement payment" in § 741(8), the *Kaiser* court considered whether a broad interpretation of those sections was proper by reviewing the legislative intent

and history of § 546(e). Its review revealed that the intent of the safe harbor provision was to protect the nation's financial markets from instability that could result if securities transactions were reversed in bankruptcy. The court also referred to treatment of similar transactions by the securities industry and the position of the Securities and Exchange Commission.

WeStreet cites several cases holding that an LLC interest is a security, including *In re Tristar Esperanza Props., LLC,* 488 B.R. 394 (B.A.P. 9th Cir. 2013), *aff'd,* 782 F.3d 492 (9th Cir. 2015). *Tristar* notes that § 101(49) does not provide a "functional description" of a "security".[10] However, reasoning that since a limited partnership interest is specifically listed as a "security" in § 101(49), the court found that an LLC interest is also a security since the similarities between a limited partnership and a membership interest in an LLC are substantial. *Tristar,* a § 510 subordination case, made this finding in an appeal from a summary judgment. The court reviewed the evidence presented at the summary judgment stage, referencing an operating agreement, as well as an arbitration proceeding prior to bankruptcy. Other cases cited by WeStreet also hold that a membership interest in an LLC is a security under the Bankruptcy Code.

The Trustee cites *Foxfield Villa Assocs., LLC v. Robben,* 967 F. 3d 1082 (10th Cir. 2022), a non-bankruptcy case which analyzed whether the subject ownership interests in an LLC were securities under the Securities Exchange Act of 1934. To answer that question, the court engaged in an extensive factual review, including a review of the LLC's operating agreement, focusing on the expectation of profit by investors.

---

[10] *Tristar,* 488 B.R. at 399.

Even if the parties agreed that Martin's interest in the Debtor was a security, there are additional elements that must be examined to determine whether the transfers are exempt under §546(e). "Settlement payment" as defined in § 741(8) includes a catch-all phrase "or any other similar payment commonly used in the securities trade. . . ." Similarly, a transfer made "in connection with a securities contract" as defined in §741(7) requires additional examination of the Purchase Agreement and related transactions. Moreover, determination of these elements may be informed by Congressional intent regarding treatment of and impact on securities markets, as employed by the *Kaiser* court, and *In re D.E.I. Systems, Inc.* 2011 WL 1261603 (Bankr. D. Utah March 31, 2011).[11]

At this stage, the Court must confine its review to the Amended Complaint. WeStreet argues that paragraphs 4 through 9 of the Amended Complaint[12] set forth the elements of its affirmative defense. Paragraph 4 references a Membership Purchase Agreement to sell Martin's 100% "ownership interest" or "interest" in the Debtor to Sparks. Paragraphs 5 and 6 repeat that the sale is of Martin's interest. Paragraph 7 alleges that Sparks executed a "Security Agreement" involving a pledge of the Debtor's assets as collateral. These allegations on their face do not establish that the subject transfers involved a security and were settlement payments or transfers made in connection with a securities transaction as contemplated and defined in §546(e). The Bankruptcy Code does not expressly include an interest in an LLC in its definition of a "security," and the parties have presented conflicting case law regarding the interpretation and

---

[11] "Because the interpretation proposed by the Defendants produces an absurd result and because courts have disagreed on the applicability of §546(e), the Court will look to Congressional intent to determine how the statute should be applied in this case." *In re D.E.I. Systems, Inc.,* 2011 WL 1261603 *3 (Bankr. D. Utah March 31, 2011) (citation omitted.)
[12] ECF No. 56.

application of WeStreet's affirmative defense. The Court concludes that the Amended Complaint does not contain sufficient factual allegations admitting the presence of each element of the safe harbor affirmative defense. The Court believes there are questions of fact regarding determination of these issues that have not yet been developed and certainly do not appear on the face of the Amended Complaint. WeStreet's motion to dismiss the First, Second and Third Causes of Action must therefore be denied.

B. **Equitable Subordination**

WeStreet argues that the Trustee cannot state a claim upon which relief can be granted regarding equitable subordination pursuant to §510 because there are no claims that WeStreet was an insider, thus the Amended Complaint must allege gross and egregious conduct tantamount to fraud, misrepresentation or overreaching to state a claim upon which relief may be granted.

The elements of an equitable subordination claim under §510 are that the creditor/claimant to be subordinated (1) engaged in inequitable conduct, (2) that conduct injured creditors or gave unfair advantage to the claimant; and (3) subordination of the claim is not inconsistent with the Bankruptcy Code. *In re Eufala Industrial Authority,* 266 B.R. 483 (B.A.P. 10th Cir. 2001). Under this doctrine "a court looks to the behavior of the parties involved." *In re Alternate Fuels, Inc.,* 789 F.3d 1139, 1154 (10th Cir. 2015). It is an "extraordinary remedy to be employed by courts sparingly." *Id.* Inequitable conduct may focus on fraud, illegality, and breach of fiduciary duties, undercapitalization or claimant's use of the debtor as a mere instrumentality or alter ego. *Id.* at 1154-55.

The Amended Complaint contains detailed allegations regarding the transfers the Trustee seeks to avoid, based on information known thus far. These allegations are deemed true for purposes of this motion to dismiss. The Trustee alleges that WeStreet knew that all of the Debtor's

assets were pledged as collateral to secure a debt owed by GLSJ, that it accepted payments from the Debtor for GLSJ's debt, and that the Debtor was either insolvent or rendered insolvent by these transfers, which harmed existing and future creditors of the Debtor. Further, the Amended Complaint includes sufficient factual allegations regarding the sale of Martin's interest in the Debtor, pledge of Debtor's assets, and payments by the Debtor, to support claims of constructive fraud and breach of fiduciary duty of Martin and Sparks aided and abetted by WeStreet. When these allegations are taken as true, as the Court is required to do at this stage, they could provide a basis to equitably subordinate WeStreet's claim. As the Court noted at the outset of this order, it is only reviewing the Amended Complaint to determine whether it contains sufficient factual information, specific rather than general in scope, to state a claim for relief that is plausible on its face.[13] The Court therefore concludes that the Amended Complaint contains sufficient factual information to support the Trustee's claim for equitable subordination for which relief could be granted.

## Order of the Court

For the reasons stated herein,

IT IS HEREBY ORDERED that Defendant WeStreet Credit Union's Partial Motion to Dismiss (ECF No. 64) is **denied.**

# # #

---

[13] *Ashcroft,* 556 U.S. at 678.